## A02A1344. VEGESINA v. ALLIED INFORMATICS, INC.
### (572 SE2d 51)

Miller, Judge.

Following a bench trial, Ravikanth Vegesina appeals from the trial court's order finding that he breached an employment agreement with Allied Informatics, Inc.. ("Allied"), and denying his counterclaim for alleged violations of federal law. He claims on appeal that (1) the trial court erred by failing to conclude that the employment agreement was void after declaring that the liquidated damages provisions of the contract were unenforceable and (2) the trial court erred in its application of federal law regarding an employer's obligation to pay an H-1B nonimmigrant employee's salary during the period when the employee is available for work. We discern no error and affirm.

The record reveals that Vegesina came to the United States from India on June 10, 1998, on an H-1B nonimmigrant visa. Allied was Vegesina's sponsor. In a letter dated May 8, 1998, which Vegesina read and signed, Allied informed Vegesina that the starting date for his employment with Allied would be on June 29, 1998, and he would be paid a salary of $44,000 per year. On June 27, 1998, Vegesina entered into an employment agreement and a noncompete agreement with Allied. The employment agreement contained a nonsolicit provision and a provision that required Vegesina to give Allied 30 days notice prior to terminating his employment with Allied. The noncompete agreement, and the notice and nonsolicit provisions of the employment agreement, all contained liquidated damages clauses in the event of a breach by Vegesina. The employment agreement did not contain a severability clause.

Vegesina informed Allied in a letter dated February 7, 2000, that he would be resigning from the company on February 15, 2000, to pursue other opportunities. Following Vegesina's departure from Allied, Allied sued Vegesina for breach of contract, claiming, among other things, that Vegesina failed to give adequate notice prior to terminating his employment with Allied and that he violated the nonsolicit provision of the employment agreement and violated the noncompete agreement. Allied requested liquidated damages and

other damages pursuant to the contract and noncompete agreement.

Vegesina filed a counterclaim, alleging that Allied was obligated under federal law to pay him for the entire time that he was in the United States and available for work, and that Allied had failed to adequately pay him. Vegesina claimed that during his employment with Allied, his salary was increased to $58,000, and then reduced to $54,000, and that Allied failed to properly pay him under these new salary amounts. Vegesina admitted, however, that there was no formal contract regarding the details of his salary increases.

Vegesina moved for summary judgment, which the court denied. The court then held a bench trial, after which the court determined that it would now grant summary judgment to Vegesina on his claim that the liquidated damages clauses in the employment and noncompete agreements were unenforceable. Nevertheless, the court then ruled that Vegesina had still breached the employment agreement and awarded nominal damages to Allied. The court found against Vegesina on his counterclaim. Vegesina appeals from this order.

1. Vegesina argues that the trial court erred by failing to conclude that the employment agreement was void after ruling that the liquidated damages provisions were unenforceable. He claims that, since the employment agreement does not contain a severability clause, it was impossible for the court to find that he breached the contract, as the allegedly breached provisions became void once the determination was made that the liquidated damages clauses were unenforceable. We disagree.

If a contract is severable, the part of the contract that is valid will not be invalidated by a separate and distinct part that is unenforceable. See OCGA § 13-1-8 (a); see also *Circle Appliance Leasing v. Appliance Warehouse*, 206 Ga. App. 405, 407 (2) (425 SE2d 339) (1992). The intent of the parties determines whether a contract is severable. OCGA § 13-1-8 (b). "The parties' intent may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations." (Punctuation and footnote omitted.) *Bulloch South, Inc. v. Gosai*, 250 Ga. App. 170, 175 (1) (b) (550 SE2d 750) (2001).

> The rule is that where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and [only some] of the promises are illegal, the promises which are not illegal will be held to be valid.

(Citations and punctuation omitted.) *O. H. Carter Co. v. Buckner*, 160 Ga. App. 627, 628-629 (287 SE2d 636) (1981).

Here, the employment agreement contained multiple promises for Vegesina to do or refrain from doing several things that were distinct and separate from the unenforceable liquidated damages provisions of the contract. For example, under the contract as written, Vegesina's promise to give 30 days notice prior to terminating his employment with Allied was separate from his promise to pay liquidated damages for failing to give the required notice. The nonsolicit clause was drafted in a similar manner, keeping the liquidated damages portion separate from the remaining language of the provision. The contract also included separate provisions for Vegesina to provide services in exchange for a salary, and for Vegesina to agree to travel if necessary. Vegesina's promises to do certain things under the contract did not eliminate or affect Vegesina's obligation to do other things as well. Thus, the parties expressed an intent for the contract to be severable, and the failure of the liquidated damages provisions did not eliminate Vegesina's separate legal obligations under the contract. We discern no error in the trial court's finding that Vegesina could still have breached the remaining terms of the employment agreement despite the fact that the court also found that the liquidated damages provisions were unenforceable.

2. Vegesina argues that, pursuant to federal regulations, Allied was required to pay him as its employee from the moment that he arrived in the United States. We disagree.

The relevant federal regulations, 20 CFR § 655.731 (c) (6) (i) and (ii), provide:

[A]n H-1B nonimmigrant shall receive the required pay beginning on the date when the nonimmigrant "enters into employment" with the employer. . . . [T]he H-1B nonimmigrant is considered to "enter into employment" when he/she first makes him/herself available for work or otherwise comes under the control of the employer, such as by waiting for an assignment, reporting for orientation or training, going to an interview or meeting with a customer, or studying for a licensing examination, and includes all activities thereafter. . . . Even if the H-1B nonimmigrant has not yet "entered into employment" with the employer . . . , the employer that has had an LCA certified and an H-1B petition approved for the H-1B nonimmigrant shall pay the nonimmigrant the required wage beginning 30 days after the date the nonimmigrant first is admitted into the U. S. pursuant to the petition, or, if the nonimmigrant is present in the United States on the date of the approval of the petition, beginning 60 days after the date the nonimmigrant becomes eligible to work for the employer. For purposes of this latter

requirement, the H-1B nonimmigrant is considered to be eligible to work for the employer upon the date of need set forth on the approved H-1B petition filed by the employer, or the date of adjustment of the nonimmigrant's status by INS, whichever is later. Matters such as the worker's obtaining a State license would not be relevant to this determination.

In the May 8, 1998 letter signed by Vegesina before he even came to the United States, he agreed that he would begin his employment with Allied on June 29, 1998, at an annual salary of $44,000. He further signed an employment contract two days before his official start date, further indicating that he would be available for work and come under the control of Allied as of June 29, 1998. We find no merit to Vegesina's argument that he had somehow entered into employment with Allied prior to this starting date. Moreover, Vegesina had not yet been in the United States for 30 days prior to his starting date with Allied, further dispelling the notion that Allied was required to pay him prior to the date that he entered into employment with the company. See 20 CFR § 655.731 (c) (6) (ii).

To the extent that Vegesina argues that he was entitled to be paid at a rate higher than his $44,000 starting salary, this was an issue of fact on which the trier of fact ruled against Vegesina. The evidence was disputed as to whether any definite contract between Vegesina and Allied entitled him to a higher salary. The terms surrounding any salary increase were also too vague and indefinite to create an enforceable contract. See, e.g., *Albee v. Krasnoff*, 255 Ga. App. 738, 742 (4) (566 SE2d 455) (2002). Indeed, Vegesina himself admitted that there was no formal contract. We will uphold findings of fact resulting from a bench trial if there is any evidence to support them. See *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 2, 2002.

*Theodore H. Lackland,* for appellant.
*Udai V. Singh,* for appellee.